**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| JONATHAN HENRY BASSFORD, | |
| Plaintiff, | Case No.: 8:23-cv-3381 |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC. 475 Anton Boulevard Costa Mesa, CA 92626 | **JURY TRIAL DEMANDED** |
| - and - | |
| TRANS UNION LLC, 555 West Adams Street Chicago, IL 60661 | |
| Serve: Illinois Corporation Service Company 801 Adlai Stevenson Drive Springfield, IL 62703 | |
| Defendants. | |

**COMPLAINT**

Jonathan Henry Bassford ("Plaintiff" or "Mr. Bassford"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (collectively, the "Defendants"), and states as follows:

**INTRODUCTION**

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other

1

institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable

reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of the Defendants' blatantly inaccurate credit reporting, wherein the Defendants reported to Plaintiff's potential creditors a delinquent account that is beyond the statutory reporting timeframe on a student loan in violation of in violation of the FCRA, 15 U.S.C. § 1681c(a)(4).

12.     Accordingly, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

14.     Plaintiff is a natural person residing in North Bethesda, Maryland, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Experian is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626, and is authorized to do business in the State of Maryland, including within this District.

16.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

17.     Trans Union is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, IL 60661, and is authorized to do business in the State of Maryland, including within this District. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

18.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

21.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

22.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

23.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

24.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

25.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### Factual Background

26.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

27.     Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

28.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

30.     Defendants' consumer reports generally contain the following information:

    (a)     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

    (b)     Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

    (c)     Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

    (d)     Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

31.     Defendants obtain consumer information from various sources.  Some consumer information is sent directly to the CRA by furnishers.

32.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

33.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendants' consumer reports.

34.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

35.     FICO Scores are calculated using information contained in Defendants' consumer reports.

36.     Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

37.     Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

38.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

39.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

40.     Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

41.     Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

42.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendants for their inaccurate credit reporting.

43.     Thus, Defendants are on continued notice of their respective inadequate reporting procedures.  Specifically, Defendants are on notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

44.     Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

//

### Plaintiff Obtained Student Loans with Navient

45.     Between September 2003 and May 2006, Plaintiff obtained several student loans with non-party Navient.

46.     On or about April 12, 2007, Plaintiff consolidated his student loans into one Navient loan, account number beginning in 502935, with an original balance of $87,954 ("Account").

47.     On or about July 16, 2015, more than eight years ago, Plaintiff made his last payment on the Account.

### Defendants Report the Plaintiff's Account More<br>Then Seven Years After Delinquency

48.     In or around August 2022, Plaintiff reviewed his credit reports and realized that Defendants were reporting his delinquent Account with a last payment date of January 1, 2018, which was not accurate. Plaintiff was concerned that reporting the wrong date of the last payment would cause the Account to remain on his credit for a longer period than allowed.

49.     Defendants also reported to Plaintiff's credit file and reports that Plaintiff's Account was "Charged Off", with a balance of $73,277 and a past due amount of $11,329.

50.     After disputing the Account with Defendants, in or around February 2023 Plaintiff discovered that Defendants continued to report the delinquent Account on his credit report, despite it being over seven years and half years since the last payment was made on the Account.

51.     Plaintiff's review of his February 2023 credit reports revealed that Defendants were in fact reporting the correct last payment made date of July 16, 2015, which should have prompted Defendants to delete the Account from his credit file.


//

**Plaintiff's First Dispute to the Defendants Regarding the
Inaccurate Credit Reporting**

52.     On or about August 6, 2022, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff disputed the fact that the Account was still on his credit file and the last payment date of January 1, 2018.

53.     Plaintiff's dispute specifically stated that the last payment on the Account was July 16, 2015, and the January 1, 2018, date was not accurate. With his dispute, Plaintiff provided a copy of his driver's license and utility bill for identification purposes and a copy of his Navient payment history to prove the last payment date was in fact July 16, 2015.

54.     Plaintiff requested that Defendants reinvestigate the disputed information, correct the reporting.

## Defendants' Unreasonable Dispute Reinvestigation

55.     Upon information and belief, Defendants did not send non-party Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 2022 disputes.

56.     Upon information and belief, Defendants failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

57.     Upon information and belief, Defendants failed to conduct a reasonable reinvestigation of Plaintiff's August 2022 disputes.

58.     Thereafter, Defendant failed to delete and or correct the reporting of the Account.

59.     Defendants failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August 2022, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

//

## Plaintiff's Second Dispute to the Defendants Regarding the Inaccurate Credit Reporting

60.     As of August 2023, Defendants continued to report the delinquent Account with a "Charged Off", with a balance of $73,277 and a past due amount of $11,329.

61.     On or about August 29, 2023, extremely shocked, surprised, and embarrassed at Defendants' inaccurate reporting, Plaintiff disputed the fact that the Account was still on his credit file.

62.     Plaintiff's dispute specifically stated that the last payment on the Account was July 16, 2015. With his dispute, Plaintiff provided a copy of his driver's license and utility bill for identification purposes and a copy of his Navient payment history to prove the last payment date

was in fact July 16, 2015.

63.     Plaintiff requested that Defendants reinvestigate the disputed information and correct the reporting.

### Defendant Experian's Unreasonable Reinvestigation

64.     Despite Plaintiff providing Defendant Experian with the necessary information to identify Plaintiff, Defendant Experian refused to investigate the claim because they determined, unreasonably, that the dispute was not sent by Plaintiff despite receiving a copy of his driver's license, utility bill, and a copy of his Navient payment history with the dispute.

65.     Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

66.     Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's August 2023 dispute.

67.     Thereafter, Defendant Experian failed to correct or delete the Account appearing in Plaintiff's credit file.

68.     Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant Trans Union's Unreasonable Reinvestigation

69.     Upon information and belief, Defendant Trans Union did not send non-party Navient an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 2023 dispute.

70.     As of the date of filing this complaint, Defendant Trans Union did not respond to Plaintiff's August 2023 dispute.

71.     Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

72.     Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's August 2023 dispute.

73.     Thereafter, Defendant Trans Union failed to correct or delete the Account appearing in Plaintiff's credit file.

74.     Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered August 2023, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendants' Method for Considering Consumer Credit Report Disputes

75.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

76.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

77.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

78.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

79.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued

to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

80.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

81.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

82.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

83.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

84.     The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

85.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

86.     As a result of reporting the delinquent student loan Account beyond seven years, and despite Plaintiff's disputes, Defendants made it practically impossible for Plaintiff to continue to obtain credit.

87.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

88.     At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

89.     As a standard practice, Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

90.     Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

91.     As a result of Defendant's conduct, Plaintiff has applied for and been denied several lines of credit and/or loans. The credit denials have caused Plaintiff a great deal of frustration and emotional distress due to his inability to obtain the necessary capital to expand his business.

92.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

//

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants)

93.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

94.     The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

95.     On numerous occasions, Defendants prepared patently false consumer reports concerning Plaintiff.

96.     Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

97.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

98.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

99.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.    Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants)**

102.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

103.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

104.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

105.    On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Experian and Trans Union and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, reporting a delinquent student loan Account that went delinquent more than seven years ago.

106.    In response to Plaintiff's disputes, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

107.    In response to Plaintiff's disputes, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

108.    Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff;

and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

109.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

110.    Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681c**
**Reporting Information Excluded from Consumer Reports**
**(Third Claim for Relief Against Defendants)**

112.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

113.    This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

114.    Plaintiff is a "consumer" as defined by the FCRA.

115.    Defendants are a consumer reporting agency that furnishes consumer reports as defined and contemplated by the FCRA.

116.    The FCRA prohibits any consumer reporting agency from "mak[ing] any consumer report containing…[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years" under the FCRA, 15 U.S.C. § 1681c(a)(4).

117.    § 1681c(c)(1) further states that the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency…"

118.    Defendants violated 15 U.S.C. § 1681c(a)(4) by continuing to report on Plaintiff's credit file the delinquent Account beyond the timeframe allowed under 15 U.S.C. § 1681c(a)(4).

119.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

120.    Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

                                             Respectfully submitted,

Dated: December 13, 2023,                    _/s/ Levi Y. Eidelman_
                                             Levi Y. Eidelman, MD #30903
                                             **CONSUMER ATTORNEYS**
                                             300 Cadman Plaza West, 12th Floor, Suite 12049
                                             Brooklyn, NY 11201
                                             T: (718) 360-0763
                                             E: leidelman@consumerattorneys.com

                                             _Attorneys for Plaintiff_
                                             _Jonathan Henry Bassford_